[Cite as *Dobbins v. Dobbins*, 2020-Ohio-4000.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ROZA DOBBINS | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MICHAEL DOBBINS | : | Case No. 2019CA00185 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Family Court
Division, Case  No. 2012 DR 00688

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     August 5, 2020

APPEARANCES:

For Plaintiff-Appellant

STANLEY R. RUBIN
437 Market Avenue North
Canton, Ohio 44702

For Defendant-Appellee

HOLLY DAVIES
Pitinii, Davies & Cazantzes, LLC
101 Central Plaza S, Ste 1000
Canton, Ohio 44702

*Baldwin, J.*

{¶1}    Plaintiff-appellant Rozsa Dobbins appeals from the November 21, 2019 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division.

## STATEMENT OF THE FACTS AND CASE

{¶2}    The parties were married on December 29, 2006 and three children were born as issue of such marriage.

{¶3}    On June 6, 2012, appellant filed a complaint for divorce against appellee. Appellee filed a counterclaim on June 15, 2012.  At the time of the parties' divorce in 2013, appellant had income in the amount of $2,292.00 per year while appellee received disability and social security benefits in the amount of $108,474.00 per year.    Due to appellee's disability, the children received Social Security derivative benefits.

{¶4}    The divorce decree incorporated the parties' Separation Agreement and shared parenting plan. The parties agreed that appellant would be the residential parent. The shared parenting plan provided that "[t]he parties agreed that the child support obligation shall be deviated downwards. The grounds for the deviation were: the time allocation between each parent, each parent's respective ability to provide for the needs of the children while in their respective care and the derivative disability benefits received by the minor children."  Appellee was to pay child support in the amount of $1,575.00. The trial court deviated downwards from his annual obligation of $20,623.70 by $1,723.00. Appellee was also required to pay to medical insurance of $70.86 per month per child and the parties agreed that he would pay $925.00 in spousal support until April of 2014.

**{¶5}** Appellee, after his spousal support obligation ended in April of 2014, moved the trial court to modify his child support obligation.  The trial court denied appellee's motion, noting that not only had appellee's spousal support obligation ended, but his obligation to pay health insurance had also ended because the children were enrolled in Medicaid.

**{¶6}** In March of 2019, an administrative hearing before a CSEA hearing officer was held. The hearing officer, in recommendations filed on March 20, 2019, did not use the children's' Social Security derivative benefits as a basis to deviate appellee's child support obligation downward, but gave appellee full credit despite the language in the parties' shared parenting plan. The hearing officer recommended that appellant pay $400.33 per month in child support and $310.00 per month per cash medical support. Both parties objected to the CSEA's recommendations. Appellee also filed a motion to modify child support.

**{¶7}** A hearing was held on November 14, 2019 in the trial court. At the hearing, appellant testified that at the time of the shared parenting plan, she was not employed outside the home and that appellee was not either but received Social Security and private disability benefits. She testified that the children received derivative Social Security benefits and that these benefits were expressly taken into consideration in determining the amount of child support that appellee was to pay. She testified that she received $423.00 a month per child in Social Security benefits. Appellant testified that she was employed outside the home at the time of the hearing at St. Michael's school where she earned $10.00 an hour and worked ten hours a week during the school year.  She earned $3,600.00 annually and had been employed there since 2019.

{¶8}     Appellant testified that she had a bachelor degree in international business, but never had a full time job due to taking care of her kids and her sister's three children who lived with her after being orphaned. She also has a two year degree in management.

{¶9}     Appellant's 2013 income tax return showed her total income as $13,539.00 which included her alimony. Her taxable income in 2018 was $475.00 from her job at St. Michael's.

{¶10}   Appellant testified that the parties agreed that she would stay home with the children until they were school age. All three children attend school for a full day. Only one of the three orphaned children was still residing with appellant.  Appellant has no physical or mental barriers to employment, but testified that she could not maintain employment due to needing to help the children with homework and taking care of them.

{¶11}   Since her divorce, appellant had not applied for any full time work. The parties' three children all are involved in athletic extra circular activities and appellee has contributed to the costs of these sports.

{¶12}   Appellee receives both private disability in the amount of $78,000.00 and Social Security Disability in the amount of $30,474.00.  Each of the children receives $411.00 a month in derivative Social Security benefits.  In January of 2019, appellee requested that CSEA review his case because appellant had employment. The recommendation was that appellee pay a total of $425.72 a month in child support. Appellee asked the trial court for a downward deviation. He noted that appellant was working and that he was spending more money on food, transportation, the children's' activities and other expenses. He was no longer paying spousal support.  Appellee's private disability is expected to terminate in 12 to 15 months at latest in December of

2021. Appellee testified that he believed appellant was capable to earning at least minimum wage. He testified that the parties had equal time shared parenting and admitted that one of the reasons he was asking for a 50% deviation was time allocation. He testified that he paid expenses beyond the child support and beyond the derivative benefits. Appellee was concerned that his financial stability would get worse the further that he went into debt and his ability to provide for his children would get worse. He believed the current child support orders were too severe.

{¶13} The trial court, pursuant to a Judgment Entry filed on November 21, 2019, found that a necessary change of circumstances and a ten percent (10%) change in income to warrant a modification of support. The trial court declined to impute income to appellant but adopted CSEA's recommendation of a support offset for the derivative benefit and granted appellee a downward deviation of support to a monthly obligation of $210.75 plus cash medical of $94.06.

{¶14} Appellant now appeals, raising the following assignments of error on appeal:

{¶15} "I. THE COURT ERRED IN NOT DEFERRING TO THE EXPRESS TERMS OF THE PARTIES' SEPARATION AGREEMENT, WHICH REQUIRED THE CHILDREN'S SOCIAL SECURITY DERIVATIVE BENEFITS BE USED AS A BASIS TO DEVIATE FROM THE GUIDELINE-CALCULATED AMOUNT OF CHILD SUPPORT AND NOT AS A DIRECT CREDIT AGAINST THE FATHER'S OBLIGATION."

{¶16} "II. THE TRIAL COURT ERRED IN DEVIATING FROM THE GUIDELINE-CALCULATED AMOUNT OF CHILD SUPPORT BASED ON EQUAL PARENTING TIME."

I

**{¶17}** Appellant, in her first assignment of error, argues that the trial court erred in not deferring to the express terms of the parties' separation agreement, which required the children's social security derivative benefits to be used as a basis to deviate from the guideline-calculated amount of child support and not as a direct credit against appellee's obligation.

**{¶18}** Derivative benefits inure directly to the child recipient and are the property of that child. *Rigel v. Rigel*, 5th Dist. Muskingum No. CT98-0021, 1999 WL 436824 (June 23, 1999). In *Williams v. Williams*, 88 Ohio St.3d 441,2000-Ohio-375, 727 N.E.2d 895, the court held that the Social Security payments made to a minor because of a parent's disability should be set off from the disabled parent's child-support obligation. R.C. 3119.05(O) provides that "Any non-means tested benefit received by the child or children subject to the order resulting from the claims of either parent <u>shall</u> be deducted from that parent's annual child support obligation after all other adjustments have been made."

**{¶19}** The trial court in this case set off the disability payments from the child support obligation. We find no err on the part of the trial court. The trial court complied with *Williams* and considered the best interests of the children.

**{¶20}** Appellant's first assignment of error is, therefore, overruled.

II

**{¶21}** Appellant, in her second assignment of error, argues that the trial court erred in deviating from the guideline-calculated amount of child support based on equal parenting time.

**{¶22}** Child support decisions, including the decision to deviate from the actual obligation, are reviewed for abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶23}** When there is shared parenting, a trial court may not automatically deviate from the worksheet amount in order to credit an obligor for any time the child spends with that parent. *Pauly v. Pauly*, 80 Ohio St.3d 386, 388-389, 1997-Ohio-105, 686 N.E.2d 1108. R.C. 3119.24 allows the trial court to deviate from the guideline calculation if that amount "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of extraordinary circumstances of the parents or because of any other factors or criteria as set forth in R.C. 3119.23 of the Revised Code." The fact that parents equally share in parenting time does not, by itself, justify a deviation in the amount of child support. *Glassner v. Glassner*, 160 Ohio App.3d 648, 2005-Ohio-1936, 828 N.E.2d 642, ¶ 48 (5th Dist.). Equal parenting time is one factor to be considered by the trial court. R.C. 3119.23 provides the trial court an additional 16 factors it may consider in determining whether to deviate from the child support guideline.

**{¶24}** In the case sub judice, there was evidence before the trial court that appellant did not work full-time outside the home while the children were young so that she could be involved in their education and extracurricular activities. There was also testimony that appellee's income came from disability and that when his private disability ran out, his income would decrease. Both parents had the children approximately 50% of the time.

{¶25}   We cannot say that the trial court abused its discretion because the trial court's decision was not arbitrary, unreasonable or unconscionable. Once appellee's private disability runs out, his income will be significantly reduced. Appellee testified that he could not continue to go into debt with all of the child support and child-related expenses. Equal parenting time was only one factor before the trial court. The trial court did not err in finding that it was in the children's best interest to deviate from the child support guideline amount. The trial court, in its Order, referenced both R.C. 3119.22 and 3119.23 in deviating from the schedules. The trial court made findings regarding the parties' ability to work, financial resources and the children's best interest.

{¶26}   Appellant's second assignment of error is overruled.

{¶27}   Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Baldwin, J.

Wise, John, J. concur,

Hoffman, P.J. dissents.

*Hoffman, P.J., dissenting*

**{¶28}** I respectfully dissent from the majority opinion. I would sustain Appellant's first assignment of error.

**{¶29}** I begin by recognizing the Ohio Supreme Court held, in *Williams v. Williams*, 2000-Ohio-375, "A disabled parent is entitled to a full credit in his or her child support obligation for Social Security payments received by a minor child due to the parent's disability." *Id.*, at syllabus. I further recognize R.C. 3119.05(O) mandates such benefits be deducted from the parent's child support obligation. The trial court complied with both the Ohio Supreme Court precedent and the statute in rendering its November 21, 2019 Judgment Entry. Why then, one might ask, do I dissent?

**{¶30}** The original child support calculation worksheet did not give Appellee-husband any credit or deduction for the Social Security benefits received by the children. That is because, in the Separation Agreement and Shared Parenting Plan, the parties agreed to deviate downwards from the worksheet calculation based, in part, upon the derivative benefit received by the minor children. Significantly, that agreement and plan was approved and adopted by the trial court as part of its divorce decree filed April 11, 2013. I say significantly because the divorce decree was filed over 12 years after the Ohio Supreme Court issued the *Williams* decision. The child support order was in conflict with *Williams* when issued. Appellee-husband did not seek to challenge it on direct appeal. As such, I find the treatment of the children's derivative benefits became law of the case between these parties for calculation of any future modification of child support.

{¶31} Also of significance is the fact *Williams* was codified in R.C. 3119.05(O) **after** the parties divorce was finalized.[1] Thus, the legislative mandate was not in effect at the time of the divorce. I believe to give retroactive application of the statute to the parties' agreement would result in an unconstitutional impairment of contract.

{¶32} Accordingly, I would sustain Appellant-wife's first assignment of error, vacate the trial court's child support order, and remand the matter to the trial court to recalculate child support.[2]

---

[1] R.C. 3119.05(O) became effective on March 28, 2019.
[2] Based upon my disposition of Appellant-wife's first assignment of error, I would find her second assignment of error to be premature.